COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia


NATHAN ELMORE THOMAS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1213-23-4                       FRANK K. FRIEDMAN
                                                     SEPTEMBER 3, 2024
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                            James E. Plowman, Jr., Judge

          Alan J. Cilman for appellant.

          Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


        Following a jury trial, the trial court convicted Nathan Elmore Thomas of transporting five

or more pounds of marijuana into the Commonwealth in violation of Code § 18.2-248.01 and

possessing with the intent to distribute five or more pounds of marijuana in violation of Code

§ 18.2-248.1.  The trial court sentenced Thomas to ten years of imprisonment, with six years and six

months suspended, and fines of $85,000.  Thomas argues that the trial court erred in denying his

motions to suppress, refusing to dismiss the charges because of improper trial testimony, and

sentencing him unlawfully.  He also objects to various aspects of federal law enforcement's

involvement in the case and the trial court's refusal to dismiss the charges.  Finding no trial court

error, we affirm the judgment.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

*The interdiction operation of United Airlines flight 2064 from Los Angeles*

On October 12, 2021, a federal Drug Enforcement Agency (DEA) task force team at Dulles Airport in Loudoun County screened luggage arriving at the airport on a flight from Los Angeles; this process is called an "interdiction operation." The task force chose that flight because narcotics are typically trafficked on flights traveling west to east. Officer Patrick Briant, also a member of the Fairfax County police, was the handler for a trained drug detection dog, Storm.[2] Officer Briant used Storm to sniff the bags on the conveyor belt outside the baggage retrieval area as each piece of luggage was loaded from the plane onto the belt.

Storm alerted to two suitcases belonging to Thomas. Both bags had luggage tags bearing Thomas' name. Detective Janet Yonkers[3] observed Thomas retrieve one of those bags from the conveyor belt in the baggage claim area. Detective Yonkers approached Thomas, produced her badge, and asked for his boarding pass and to speak with him. Detective Yonkers advised Thomas about the dog's alert on the bag and asked if he had any drugs or large sums of currency. Thomas said no, then refused the officer's request to search the bag. Detective Yonkers explained that Thomas was being detained, "there would be a search warrant" for the bag, and

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[2] Officer Briant testified that he was the only police officer trained to work with Storm. Storm was certified to identify marijuana, cocaine, ecstasy, heroin, and methamphetamine by smell.

[3] Detective Yonkers, of the Arlington County police and DEA task force, was working with Officer Briant in the interdiction at Dulles Airport on October 12, 2021.

that Thomas "could just really sit over in one of the seated areas." Thomas "asked for his attorney" but did not provide the name or contact information of an attorney.[4] The police retrieved Thomas' other bag from the carousel. Thomas was seated, but unrestrained, during the wait for a search warrant for the luggage. For Thomas' privacy, the police moved him and his bags to a walled area that was still accessible to the public.

*The search warrant and subsequent search of Thomas' bags*

Corporal Michael Austin of the Metropolitan Washington Airports Authority ("MWAA") applied for, and obtained, a search warrant to search Thomas' bags. Corporal Austin stated that Officer Briant was partnered with Storm on the first page of the affidavit but erroneously stated that "your affiant"—being Corporal Austin—was partnered with Storm on a subsequent page.

The search took place at 9:42 p.m. in a seating area near a back wall in the baggage claim. Thomas was not handcuffed. There were at least four other DEA agents "essentially just standing around." As the officers removed items from his luggage, Thomas commented, "It's Delta-8" or "It's only Delta-8."[5] Officer Briant testified that Thomas' comment was a "spontaneous utterance[]" and was not in response to any question posed to him by a law enforcement officer.[6] Thomas' luggage contained "minimal clothing." The luggage also contained sheets of a yellow substance later determined to be THC wax slabs. There were also

---

[4] Officer Briant's report noted that Thomas asked for his attorney, but Detective Yonkers testified that she did not recall Thomas asking for an attorney. Officer Briant testified that due to concerns for officer safety and destruction of evidence, suspects are "typically" not allowed to use a phone while in investigative detention.

[5] "Delta-8" is a compound derived from a hemp plant that is similar in appearance to marijuana but is legal to grow.

[6] At the suppression hearing, Officer Briant indicated Thomas also said that the police "would be sorry because [they] didn't know what [they] were looking at" and "didn't know what [they] were doing." These comments were not introduced into evidence at trial, so any consideration of their admissibility is moot. *See Jenkins v. Commonwealth*, 244 Va. 445, 452 (1992).

jars containing purchased material. Scientific testing determined that the items seized from Thomas' bags contained marijuana and had a combined weight of more than five pounds. Testifying as an expert in the use, packaging, and distribution of narcotics, Officer Briant described the potency and potential uses for the THC wax product found in Thomas' bags and opined that possession of these items was inconsistent with personal use.

*The suppression hearing*

Thomas moved to suppress the items seized in the search of his bags. The motion was set to be heard on September 19, 2022. Thomas' counsel issued subpoenas for several members of the task force for that hearing. The United States removed the subpoenas to the federal district court pursuant to 28 U.S.C. § 1442. The trial court removed the suppression hearing from the docket.

On November 15, 2022, Thomas moved to suppress the statements he made during the search of his luggage. That motion, along with the earlier motion seeking suppression of the evidence seized, was heard on January 3, 2023. Thomas did not subpoena witnesses for the January 2023 hearing.[7] The trial court denied Thomas' motion to suppress his statements. The trial court found that Thomas made his statements in response to officers removing a package from his luggage during their search. The court further found that the police did not violate Thomas' *Miranda*[8] rights when they did not allow him to contact an attorney during his detention. The court also found that the search of his luggage was not designed to elicit a response from Thomas and his statements were voluntary.

The trial court denied Thomas' motion to suppress the evidence seized from his luggage. The court found that the search warrant appropriately limited the scope of search to "drugs [and]

---

[7] Officer Briant and Detective Yonkers still appeared at the hearing.

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

any amount of marijuana that might be illegal." The trial court found no problem with the affidavit for the search warrant, finding that, when read as a whole, it clearly identified Officer Briant as Storm's handler. The court concluded that Storm's sniff of Thomas' bags provided sufficient probable cause for the officers to obtain a search warrant for the bags.

*Pretrial motions to dismiss*

Thomas moved to dismiss the case for "selective enforcement" and "selective prosecution." Prior to the hearing, Thomas' counsel once again issued subpoenas for DEA agents. None of those subpoenas were issued in accordance with the governing Code § 19.2-272 et seq. On January 13, 2023, the United States removed the subpoenas to the United States District Court for the Eastern District of Virginia and moved to quash them.

At the hearing on January 17, 2023, Thomas' counsel conceded that he elected not to comply with the federal regulations regarding production or disclosure of information held by the Department of Justice. The trial court ruled that Thomas could rely on the Commonwealth's subpoenas for federal officers that were issued for the trial. The trial court concluded that the DEA is "taken out of the equation" when the Commonwealth's Attorney elects to pursue charges based on information provided to them by the DEA. The trial court found that the federal government lacks the discretion to determine "what gets prosecuted at the state level" and that a local Commonwealth Attorney's discretion whether to prosecute acts as a "buffer" against federal influence. The trial court denied both motions to dismiss.

The federal district court quashed Thomas' subpoenas on January 18, 2023, reasoning that "the state court in this action lacks the jurisdiction to compel federal employees who are acting pursuant to agency direction to testify through subpoena." After that ruling, Thomas filed a new motion to dismiss in the trial court on January 23, 2023, and the court held a hearing on the motion on January 26, 2023. The trial court again denied Thomas' motion to dismiss,

finding that information on topics other than the witnesses' knowledge of the encounter with Thomas was not relevant here.

*A jury convicts Thomas*

At trial, Thomas asserted that the search warrant was invalid because Officer Briant did not advise Corporal Austin, who prepared the search warrant affidavit, that Storm had alerted in situations where no illegal substances were found. Thomas suggested that the magistrate made the probable cause determination with incomplete information. The Commonwealth objected that Thomas should have raised the issue in a pretrial motion to suppress. The trial court denied the motion without further comment.

Also, during the trial, Thomas objected to a portion of Detective Yonkers' testimony that he refused to consent to a search of the bag. He moved to dismiss the case, arguing that he had "a right not to consent to a search, and it's prejudicial and I don't think it should have been broached." The trial court denied the motion but offered to give a curative instruction. Thomas did not request such an instruction at that time.

The jury convicted Thomas of the two charged offenses. Thomas moved for a new trial, challenging the constitutionality of the sentence for his convictions. The trial court denied that motion.

ANALYSIS

I. The Trial Court Did Not Err In Denying Thomas' Motion To Suppress His Voluntary Statement

Thomas argues that the trial court erred in denying the motion to suppress his statement that his luggage contained "Delta-8." Emphasizing how long the police detained him while they obtained a search warrant, Thomas contends that the police subjected him to custodial interrogation after he invoked his right to an attorney.

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560).

"The principle is now well-established that, pursuant to the Fifth Amendment of the United States Constitution, law enforcement officers must inform a suspect in a custodial interrogation of certain rights, including the right to remain silent and to have the assistance and presence of legal counsel during the interrogation." *Bass v. Commonwealth*, 70 Va. App. 522, 539-40 (2019) (quoting *Stevens v. Commonwealth*, 283 Va. 296, 302 (2012)). If a suspect waives his right to an attorney after he has received *Miranda* warnings, the police "are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation." *Id.* at 540 (quoting *Commonwealth v. Redmond*, 264 Va. 321, 328 (2002)); *see also Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

"*Edwards* held that when an accused, during a *custodial interrogation*, invokes the right to have counsel present, the police may not resume the interrogation until the individual re-initiates communications and waives his right to counsel." *Tipton v. Commonwealth*, 18 Va. App. 832, 834 (1994). But "[t]he *Edwards* rule has not been expanded to include non-custodial demands for an attorney . . . ." *Id.*; *see also Webber v. Commonwealth*, 26 Va. App. 549, 558 (1998). Thus, whether Thomas faced custodial police interrogation is a threshold issue to the claim on appeal.

In *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980), the United States Supreme Court found that, in the context of *Miranda*, interrogation includes police communication that is the

functional equivalent of questioning. "Words or actions constitute the functional equivalent of questioning when the officers should know their communication is 'reasonably likely to elicit an incriminating response from the suspect.'" *Thomas v. Commonwealth*, 72 Va. App. 560, 579-80 (2020) (quoting *Timbers v. Commonwealth*, 28 Va. App. 187, 195 (1998)). We must determine "whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." *Timbers*, 28 Va. App. at 195 (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 15 (1988)).

The record supports the trial court's finding that the police did not subject Thomas to interrogation or its functional equivalent to prompt his remark, regardless of the time it took for the police to get the search warrant. There was no evidence that the police questioned Thomas. As Officer Briant testified, Thomas' comment about Delta-8 was a spontaneous remark and not a response to any question by the police. Thomas simply volunteered the comment while the police searched his luggage. "Because volunteered statements of any kind do not implicate the Fifth Amendment, they are unaffected by *Miranda*'s precautionary evidentiary rules." *Thomas*, 72 Va. App. at 578. Nor is there "a constitutional privilege against inadvertent self-incrimination." *Id.* For these reasons, the trial court did not err in refusing to suppress Thomas' statement.[9]

Having concluded that Thomas was not subjected to custodial police interrogation, we need not examine whether he invoked his right to counsel. *See Commonwealth v. White*, 293 Va.

---

[9] Thomas also appears to contend that the trial court erred in denying the motion to suppress his statement because he invoked his right to counsel under the Sixth Amendment. But "the Sixth Amendment right to counsel does not attach prior to initiation of adversarial proceedings." *Lafon v. Commonwealth*, 17 Va. App. 411, 422 (1993) (citing *United States v. Gouvia*, 467 U.S. 180, 188 (1984)). "The Sixth Amendment right to counsel does not attach during the investigation of a crime, even when the suspect has retained counsel." *Id.* (citing *Hummel v. Commonwealth*, 219 Va. 252, 256-57 (1978)). No adversarial proceeding against Thomas had been initiated at the time he commented about his bag containing Delta-8. Thus, we find no merit to Thomas' Sixth Amendment claim.

411, 419 (2017) (recognizing that "judicial restraint dictates that we decide cases on the best and narrowest grounds available" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

## II. The Trial Court Did Not Err In Denying Thomas' Motion To Suppress The Evidence Seized During The Search Of Thomas' Bags

### A. The Dog Sniff

Thomas contends that his Fourth Amendment rights were violated when Storm sniffed his luggage and alerted for narcotics. He maintains that the police, without justification, conducted a general search using Storm to sniff the baggage from the Los Angeles flight. We disagree.

"The law is well established that a canine sniff, standing alone, is not a search for purposes of the Fourth Amendment." *Sanders v. Commonwealth*, 64 Va. App. 734, 753 (2015). In *United States v. Place*, 462 U.S. 696, 707 (1983), the United States Supreme Court "affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment." But

> [a] "canine sniff" by a well-trained narcotics detection dog . . . does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

*Id.*; *see also Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (use of a narcotics detecting dog during a lawful traffic stop seldom implicates legitimate privacy interests). The Court concluded that "exposure of respondent's luggage, which was located in a public place, to a trained canine"

was not a "'search' within the meaning of the Fourth Amendment." *Place*, 462 U.S. at 707. Upon this well-established authority, the trial court did not err in finding that the police did not search Thomas' luggage by having Storm sniff it.

### B.  Search Warrant

Thomas challenges the trial court's denial of his motion to suppress evidence that the police seized after obtaining the warrant and searching his luggage.  Thomas asserts that the search warrant "obtained in this case violated each of the requirements delineated in *United States v. Leon*," 468 U.S. 897 (1984).  In *Leon*, "'the United States Supreme Court established a good-faith exception to the exclusionary rule, applicable when a search is conducted pursuant to a warrant subsequently determined to be defective for Fourth Amendment purposes,' and 'outlined four circumstances in which the good-faith exception to the exclusionary rule would not apply.'" *Midkiff v. Commonwealth*, 54 Va. App. 323, 330 (2009) (quoting *Ward v. Commonwealth*, 273 Va. 211, 222 (2007)), *aff'd on other grounds*, 280 Va. 216 (2010).  We do not conclude that the search warrant was "defective for Fourth Amendment purposes," thus we need not reach the question of whether the *Leon good-faith exception* applies here.

"[W]here the police conduct a search pursuant to a judicially sanctioned warrant, the defendant must rebut the presumption of validity by proving that the warrant is illegal or invalid." *Brown v. Commonwealth*, 68 Va. App. 517, 524 (2018) (alteration in original) (quoting *Lebedun v. Commonwealth*, 27 Va. App. 697, 711 (1998)).  "When reviewing a question of probable cause, appellate courts consider 'only those sworn, written facts stated in the search warrant affidavit' as well as 'information simultaneously presented to a magistrate by sworn oral testimony' or in 'supplemental affidavits.'" *Id.* (quoting *Adams v. Commonwealth*, 275 Va. 260, 270 (2008)).  "In determining whether the affidavit[] [is] sufficient to support the search warrant, [appellate courts] must look to the totality of the circumstances." *Id.* (third alteration in original)

(quoting *Derr v. Commonwealth*, 242 Va. 413, 421 (1991)). "Viewing an affidavit's facts in their totality, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 525 (alterations in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Id.* (all but first alteration in original) (quoting *Gates*, 462 U.S. at 238-39). On review of this issue, we "must grant 'great deference' to the magistrate's interpretation of the predicate facts supporting the issuance . . . and to the determination of whether probable cause supported the warrant." *Cunningham v. Commonwealth*, 49 Va. App. 605, 612-13 (2007) (alteration in original) (quoting *Janis v. Commonwealth*, 22 Va. App. 646, 652, *aff'd upon reh'g en banc*, 23 Va. App. 696 (1996)).

Officer Michael Austin signed the affidavit to obtain a search warrant for Thomas' luggage. In the affidavit, Officer Austin detailed both his and Officer Briant's training, qualifications, and experience in law enforcement. The affidavit stated:

> *Detective P. C. Briant is currently the handler of a Controlled Substance Detection Canine, a German Shepherd by the name of Storm. He and Canine partner Storm* were trained by the United States Customs and Border Protection Canine Program and have received basic training in the detection of odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy. *He and Canine partner Storm* were certified on December 12, 2018 by the United States Customs and Border Protection Canine Program as a controlled substance detection canine team and our certification was renewed on October 7, 2021, and remains current. As a result of this training, Canine Storm has been certified as reliable in the detection of odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy. On November 21, 2019, *your Affiant and Canine partner Storm* were certified by the North America Police Working Dog Association as a Narcotic Detection Team and our certification was renewed on September

29, 2021 and remains current. . . . *Detective P. C. Briant has worked exclusively with Canine Storm since October 2018* and is familiar with the trained responses of the canine with odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy.

(Emphases added). The affidavit further related that:

[o]n October 12, 2021, your Affiant, and other Task Force Officers with the Drug Enforcement Administration (DEA) were operating in the Airport Operation Area of the Dulles International Airport, focusing on baggage for United Airlines flight 2064 from Los Angeles, California to Dulles International Airport. During our operation, Detective P. C. Briant deployed his narcotic detection canine Storm on the baggage belt for baggage claim carousel number four (4) and observed an alert for the odor of narcotics [on two described suitcases].

The affidavit stated that the bags were identified as belonging to Thomas, who was detained at the airport and did not consent to a search of the luggage. Officer Austin stated that he sought the search warrant for the bags for drugs "[b]ased upon the alert of the Controlled Substance Detection Canine Storm, a certified Controlled Substance Detection Canine, [and] the reading of that alert by Detective P. C. Briant[.]" The affidavit also stated that Officer Briant advised that *his* narcotics detection dog Storm had alerted for the odor of narcotics upon Thomas' bags. The search warrant, issued at 9:39 p.m. on October 12, 2021, authorized the police to search Thomas' luggage for "Controlled substances, Marijuana, paraphernalia, and items/instrumentalities associated with the use, distribution, and packaging of controlled substances and marijuana."

The affidavit contained a misstatement that the affiant, Officer Austin, was Storm's handler. But, when read as a whole, the affidavit relates that Officer Briant, not Officer Austin, was trained and certified with Storm, that Officer Briant worked exclusively with Storm, and that in the drug interdiction operation Officer Briant recognized Storm's signals of alert on Thomas' bags.

In *Alvarez v. Commonwealth*, 24 Va. App. 768, 775 (1997), we concluded that a drug dog's "hit" on a cardboard box in the cargo area of a bus at a public passenger terminal established probable cause to believe that the box contained a controlled substance. Likewise, in *Quigley v. Commonwealth*, 14 Va. App. 28, 34 (1992), this Court found that a drug dog's alert to the presence of contraband provided probable cause for an automobile search.

Consistent with these findings, and granting great deference to the magistrate's determination, we conclude that the affidavit provided probable cause to believe that drugs were in the bags on which Storm alerted. Thus, the warrant was lawful and authorized the police to search Thomas' bags. Because the search warrant was not "defective for Fourth Amendment purposes," we need not consider whether the good-faith exception to the exclusionary rule applied here.

III. The Trial Court Did Not Err When It Denied Thomas' Motion To Dismiss

Thomas maintains that the trial court erred in denying his motion to dismiss the proceedings because of the involvement of federal law enforcement authorities and a federal court in the matter. He raises many complaints about the alleged initiation of the proceedings by federal agents and a federal court's quashing of witness subpoenas for hearings on pre-trial motions. Thomas wholly fails to acknowledge the role of the Commonwealth in his prosecution, which prosecuted the case after receiving the allegations from the federal task force and local police.

A Loudoun County grand jury indicted Thomas for transporting more than five pounds of marijuana into the Commonwealth with the intent to distribute and possessing more than five pounds of marijuana with the intent to distribute. On June 3, 2022, Thomas moved to suppress evidence as well as other motions. A hearing on the motion to suppress was scheduled for September 19, 2022.

On September 15, 2022, the United States Attorney filed a notice for the removal to federal court of subpoenas for six DEA task force agents to appear at a motions hearing in Loudoun County Circuit Court on September 19, 2022. The United States Attorney moved to quash the subpoenas in federal court for Thomas' failure to comply with regulations of the Department of Justice in accordance with *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The trial court held a hearing in the case on September 19, 2022. The transcript of that hearing was not timely filed and is not a part of the record on appeal, so we may not consider it. *See* Rule 5A:8. The order from the September 19, 2022 hearing suggests that the trial court entertained and ruled on several motions, but not upon Thomas' motion to suppress evidence.

On November 4, 2022, Thomas moved to dismiss the case based on the federal court's order granting the motion to quash the witness subpoenas. The federal court's October 14, 2022 order granting the motion to quash, which Thomas attached as an exhibit to his motion to dismiss, cited *Touhy* and stated that "the state court in this action does not have the authority to compel the testimony of Drug Enforcement Administration task force members through subpoena."

On December 20, 2022, Thomas filed a "Motion to Dismiss for Selective Enforcement and Selective Prosecution." He maintained that the DEA was selectively prosecuting him "because he [wa]s not a publicly traded corporation" that distributed marijuana, nor was he authorized to distribute marijuana. Thomas claimed, "[T]he United States and its DEA are too cowardly or too corrupt to enforce the Federal law against those with political and financial power or against states[.]" He maintained that the "selective enforcement" of Virginia law on marijuana was "based on politics" and the "selective prosecution of [Thomas] . . . violate[d] the Constitutional requirement for equal justice[.]"

At the start of a hearing on January 3, 2023, the trial court noted that the motions scheduled to be heard that day were only Thomas' motions to suppress and the November 4, 2022 motion to dismiss because the federal court had quashed the subpoenas. Thomas argued that the trial court should dismiss the charges because he could not subpoena officers who were involved in the investigation, the search, and the seizure of evidence. He maintained that he had subpoenaed witnesses who were members of the DEA task force. Defense counsel asserted that a federal court had ruled that the trial court did not have the authority to compel the testimony of DEA members through subpoena. Defense counsel admitted that he refused to advise the federal court of why the witnesses' testimony was relevant to Thomas' charges, as required by federal regulation. The Commonwealth contended that the defense had failed to follow the proper procedures under *Touhy* to secure the attendance of the witnesses. The trial court denied the motion to dismiss, finding that the defense had not complied with federal regulations to obtain the presence of the witnesses by subpoena. In addition, the trial court noted that Thomas had not proffered the witness testimony, so the court had no way to determine whether "these people really had anything to say or not."

The trial court then held an evidentiary hearing on Thomas' motions to suppress his statement and the evidence seized by the police. Officer Briant testified for the Commonwealth and was cross-examined by Thomas. Thomas then called Detective Yonkers to testify. The record does not reflect that Thomas tried to subpoena any witnesses for the January 3, 2023 hearing. After hearing the evidence and argument, the trial court denied the motions to suppress.

At a later hearing on the selective enforcement issue, Thomas asserted that a motion was pending in federal court to quash his subpoenas for witnesses to appear that day. He maintained that large corporations were producing marijuana, but the laws on marijuana were not enforced against them. The trial court asked Thomas what evidence he would have elicited from the

witnesses he had attempted to subpoena. Defense counsel said that he did not know. The trial court noted that it was Virginia law enforcement, not the DEA, that elects whether to pursue charges in courts of the Commonwealth. The trial court observed that Officer Briant, while also a member of the DEA task force, was an officer of the Fairfax County police. The trial court ruled that the election to prosecute Thomas was within the discretion of the Commonwealth's Attorney and denied his motion to dismiss for selective enforcement.

To the extent that Thomas claims on appeal that the ruling of the federal court concerning the witness subpoenas violated his right to compulsory process, he proffered no evidence that he was prevented from presenting. Indeed, in the trial court, Thomas said that he did not know what the content of the witnesses' testimony would be. "Error may not be predicated upon admission or exclusion of evidence, unless . . . the substance of the evidence was made known to the court by proffer." *Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020) (alteration in original) (quoting Va. R. Evid. 2:103); *see Massey v. Commonwealth*, 67 Va. App. 108, 132 (2016) ("The failure to proffer the expected testimony is fatal to [the] claim on appeal." (alteration in original)).

In addition, Thomas' various arguments rest on his claim that the charges were "initiated" by the DEA and should have been brought in federal court. We disagree. Although they were also affiliated with the DEA, law enforcement officers from Virginia localities were involved in the interdiction, as well as the search and seizure of evidence from Thomas' luggage at Dulles Airport. A Loudoun County grand jury indicted Thomas for violating Virginia law. "[I]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." *Barrett v. Commonwealth*, 268 Va. 170, 178 (2004) (quoting *Barrett v. Commonwealth*, 41 Va. App. 377, 391 (2003)). "Indeed, 'the institution of criminal charges, as well as their order and timing, are matters of prosecutorial

discretion.'" *Id.* (quoting *Barrett*, 41 Va. App. at 391). We find no abuse of discretion in the institution of criminal charges against Thomas.

### IV. The Trial Court Did Not Err In Overruling His Objection To Officer Briant's Comment That Thomas Refused Consent To Search His Bag

Thomas argues that the trial court erred in overruling his objection to Officer Briant's comment at trial that Thomas refused consent to search his luggage. "Appellate courts review evidentiary rulings under an abuse of discretion standard." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Boone v. Commonwealth*, 63 Va. App. 383, 388 (2014)). "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." *Id.* (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Even if we assume *arguendo* that the trial court erred in overruling Thomas' objection, the admission of Officer Briant's comment that Thomas refused consent to search his luggage does not necessarily constitute reversible error. "We must reverse a criminal conviction unless it plainly appears from the record and the evidence given at the trial that the error did not affect the verdict." *Cairns v. Commonwealth*, 40 Va. App. 271, 286 (2003). "An error does not affect the verdict if we can determine, without usurping the [fact finder's] . . . function, that, had the error not occurred, the verdict would have been the same." *Id.* "[I]f the evidence admitted in error was merely cumulative of other, undisputed evidence, we may still conclude that the error did not affect the verdict." *Perry v. Commonwealth*, 58 Va. App. 655, 672 (2011) (quoting *Ferguson v. Commonwealth*, 16 Va. App. 9, 12 (1993)).

The evidence at trial was uncontroverted that the police searched Thomas' bags after obtaining a search warrant. And the evidence that Thomas possessed the two bags and knew of their contents was overwhelming. Both bags bore luggage tags with Thomas' name, and he

- 17 -

claimed one from the baggage carousel. When the police opened the bags, Thomas commented that they contained Delta-8, a hemp product. Considering all the circumstances, we conclude that any possible error in the trial court's ruling did not affect the verdict and was harmless.

V. Thomas' Sentence Was Not Unconstitutional

The trial court denied Thomas' post-trial motion arguing that the terms of imprisonment defined by Virginia law constituted unconstitutional cruel and unusual punishment. Thomas challenges this ruling on appeal.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564-65 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

The sentence the trial court imposed was within the ranges set by the legislature. *See* Code §§ 18.2-248.01, -248.1. It was within the trial court's purview to consider any mitigating factors in determining Thomas' sentence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Thomas' sentence was within the statutory range, so "our task is complete." *Id.*

In addition, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653

(quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)).  *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*