COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Chafin and Decker
Argued by teleconference

**PUBLISHED**

NAJEE FINIQUE HAIRSTON

OPINION BY
v.        Record No. 0714-16-3        JUDGE MARLA GRAFF DECKER
APRIL 11, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

M. Lee Smallwood, II, Deputy Public Defender, for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Najee Finique Hairston appeals his convictions for possession of cocaine and possession of a cannabimimetic agent, both with the intent to distribute, in violation of Code § 18.2-248, as well as for driving on a suspended license, third or subsequent offense, in violation of Code § 46.2-301. He contends that the circuit court erred by denying his motion to suppress. As the basis for his claim, the appellant argues that the stop of the vehicle he was driving and the seizure of his person were unreasonable because any basis for conducting the stop had grown stale. We hold that the stop and seizure of the appellant were supported by probable cause, which had not grown stale during the three hours that passed after the law enforcement officer observed him driving recklessly in violation of the law. Consequently, we hold that the court's denial of the motion to suppress was correct, and we affirm the challenged convictions.

# I. BACKGROUND[1]

On March 7, 2015, between 2:15 and 2:30 p.m., Detective Karen Fraser of the City of Danville Police Department was driving on a two-lane road through adjacent Pittsylvania County on her way to begin her shift in Danville at 2:45 p.m. A white Camaro traveling in the same direction passed her vehicle "in a curve on the double [solid-yellow] line[s]." Fraser recognized the car from "dealing with it in the city." As she continued to watch, the Camaro passed a second vehicle and then a third one in a similar fashion, each time crossing the double solid-yellow lines and "veer[ing] into the left lane of oncoming traffic." The third of these traffic violations occurred within a mile of the Danville city limits. Additionally, the Camaro was "traveling at a high rate of speed" as it drove toward the city.

Detective Fraser continued to follow the car as it entered the city limits. She did so because she "planned on taking warrants out on the person for reckless driving" and needed "to know who the driver was." When the Camaro stopped at a traffic light, she photographed its license plate. Fraser then pulled into the lane adjacent to the Camaro's right side, and while the cars were three to five feet apart, she photographed the driver. Additionally, the driver lowered the front passenger window, giving her an unobstructed view of his face. The driver, who was alone in the car, was not the person she knew to be its owner, and she did not recognize him. After he made some comments to her, while still stopped at the traffic light, she told him that she was a police officer. Fraser added that "as soon as [she] found out who he was[,] . . . [she] would be trying to obtain a warrant on him for the way he was driving."

---

[1] In ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing and at trial. See, e.g., Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012). The Court views that evidence in the light most favorable to the party who prevailed below, in this case the Commonwealth. E.g., id.

When Fraser arrived at the police precinct to begin her shift, she showed the photographs to other officers and described the man by race and hairstyle. None of the officers were able to identify him. Fraser asked them to look for the Camaro while on duty that night because she "wanted to try to obtain the driver's information."

At about 5:00 p.m. that evening, while Detective Fraser was on patrol with Officer L.D. Land, he pointed out a white Camaro and asked Fraser if it was the car she had seen earlier. Fraser positively identified the car and determined that its driver was the same person she had seen driving in a reckless manner earlier that day. She also looked at the photographs she had taken and confirmed that the license plate number matched.

Fraser told Land to stop the car so that she could identify the driver. The Camaro pulled into a convenience store, and Land parked behind it. Officer Land approached the driver, who was the appellant.[2] Detective Fraser went to the passenger's side and recognized the passenger as the owner of the vehicle.

As soon as Land made contact with the appellant, before the officers had identified the appellant by name, Land detected the odor of burned marijuana. The officers ordered the occupants out of the car and searched it. They found a large quantity of cocaine and synthetic marijuana, as well as various packaging materials and other paraphernalia.

The appellant was arrested for possession of cocaine with intent to distribute and possession of a cannabimimetic agent with the intent to distribute. He was later indicted for those offenses, as well as for driving on a suspended license, third or subsequent offense. He was not charged with or prosecuted for reckless driving.

_____

[2] As Land approached, the appellant "jump[ed] out . . . of the car." The officer "instructed him to get back into the vehicle," and the appellant complied.

Prior to trial, the appellant filed a motion to suppress the evidence obtained in what he contended was an unconstitutional seizure. At the hearing on the motion, he argued that the stop was "clearly pretextual," emphasizing that Detective Fraser made no attempt to get the appellant's name when she spoke to him at the traffic light during their original encounter. He also suggested that she lacked reasonable suspicion to conduct a traffic stop when she and Land detained the appellant later in the convenience store parking lot because the information regarding the "mere traffic infraction" had become "stale."

The trial court denied the motion to suppress. In doing so, it found that Detective Fraser identified the car and the driver less than three hours after she observed the traffic offense. Additionally, the court held that the fact that the detective needed the driver's name to pursue reckless driving charges against him, whether by a summons she issued during the encounter or under an arrest warrant issued later by a magistrate, provided reasonable suspicion for an investigatory stop.

The appellant was later convicted of the charged offenses in a bench trial. For each drug offense, he was sentenced to ten years' incarceration with seven years six months suspended. He was sentenced to six months' incarceration with five months ten days suspended for the driving offense.

## II. ANALYSIS

The appellant contends that the stop of the vehicle he was driving violated the Fourth Amendment of the United States Constitution because the only information supporting the stop was stale. He emphasizes that he was not, at that time, committing any crime or "doing anything suspicious" and that the only basis for the stop was a traffic infraction witnessed by one of the

officers earlier in the day.[3] He suggests that his earlier actions did not justify a seizure because the officers did not have an arrest warrant based on that conduct.[4]

In reviewing the denial of a motion to suppress, we "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008). It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error. Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). The question of whether a search or seizure violated the Fourth Amendment is "a mixed question of law and fact that we review *de novo*" on appeal. Id. at 694, 668 S.E.2d at 145. An appellate court independently reviews the trial court's application of relevant legal principles such as whether reasonable suspicion or probable cause supported a seizure. Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). In doing so, however, the Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." Malbrough, 275 Va. at 168, 655 S.E.2d at 3. Moreover, "we give due weight to the inferences drawn from those facts by resident judges and

---

[3] The appellant's assignment of error also notes that Detective Fraser observed the traffic infraction in a jurisdiction adjacent to the City of Danville. However, the appellant does not dispute that the detective had authority to make an arrest for behavior that she observed within a one-mile radius of Danville and that the final traffic infraction that she saw him commit earlier that day occurred within this one-mile radius. See Code § 19.2-250(A).

[4] The appellant's assignment of error challenges only the validity of the initial seizure and does not independently contest what happened afterward. Additionally, to the extent that he attempts in the argument portion of his brief to contest the officer's act of ordering him to return to his vehicle, this argument is without merit. See, e.g., Alston v. Commonwealth, 40 Va. App. 728, 733-35, 741-43, 581 S.E.2d 245, 248, 252-53 (2003) (holding that officers detaining a driver who parked and exited his car quickly as they approached in their patrol vehicle did not violate his Fourth Amendment rights by requiring him to "get back in his car before questioning him"); see also Brendlin v. California, 551 U.S. 249, 258 (2007) (holding that it is "reasonable . . . that a police officer at the scene of . . . [an] investigation will not let people move around in ways that could jeopardize his safety" and discussing the various ways an officer may limit such movement).

local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

A law enforcement officer has a legitimate constitutional basis for seizing a person if the officer has either reasonable suspicion or probable cause to believe, "based on objective facts, that the [person] is involved in criminal activity." Whitaker v. Commonwealth, 279 Va. 268, 274, 687 S.E.2d 733, 736 (2010) (alteration in original) (quoting Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997)).

Reasonable suspicion "is more than an 'unparticularized suspicion or "hunch."'" Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Nevertheless, it "requires only 'some minimal level of objective justification.'" Branham v. Commonwealth, 283 Va. 273, 280, 720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). The existence of reasonable suspicion permits a brief seizure "while the officer questions [the suspect], tries to identify him[,] and attempts to gather additional information to . . . dispel or confirm his suspicions." Id. at 279-80, 720 S.E.2d at 78.

Probable cause for a warrantless arrest "exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008) (quoting Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)); cf. Heien v. North Carolina, 135 S. Ct. 530, 535, 539-40 (2014) (assessing whether the officer had probable cause to arrest in light of whether the facts proved a crime as defined by state law). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to' probable cause." Maryland v.

Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas, 517 U.S. at 696). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (holding that probable cause existed to arrest for a seatbelt violation under state law), quoted with approval in Joyce v. Commonwealth, 56 Va. App. 646, 658, 696 S.E.2d 237, 243 (2010) (holding that probable cause existed to arrest for trespassing under state law); see Virginia v. Moore, 553 U.S. 164, 171 (2008) (holding that probable cause existed to arrest for driving on a suspended license under state law).

Applying these principles, we conclude that the officers had probable cause to arrest the appellant for the earlier offense of reckless driving, thereby also meeting the lesser standard of reasonable suspicion to detain the appellant to investigate that same offense. See United States v. Lopez, 911 F.2d 1006, 1009 (5th Cir. 1990) (holding that a conclusion that reasonable suspicion supported the stop of a vehicle was subsumed within the trial court's ruling that the officer had probable cause for the stop); State v. Keck, 4 N.E.3d 1180, 1184 (Ind. 2014) (holding that "[i]f an officer observes a driver commit a traffic violation, he has probable cause—and thus also the lesser included reasonable suspicion—to stop that driver"). Detective Fraser, a trained law enforcement officer, observed the appellant driving in a manner that she believed was reckless. The record supports her assessment. The appellant drove "at a high rate of speed" and passed a vehicle on a curving two-lane road marked with double solid-yellow lines indicating that passing was not permitted. See Code § 46.2-804(6) (delineating highway markings consisting of "double[,] . . . immediately adjacent solid yellow lines" as prohibiting the driving of a vehicle "to the left of such lines"). Virginia's statutes defining various traffic offenses support the conclusion that the manner in which the appellant was driving the car provided Fraser with probable cause to believe that the appellant committed a Class 1 misdemeanor. See

- 7 -

id.; Code § 46.2-857 (proscribing reckless driving by "travel[ing] abreast of any other vehicle traveling in a lane designed for one vehicle"); Code § 46.2-868 (providing that reckless driving is a Class 1 misdemeanor); see also Code § 46.2-852 (defining the "general rule" of reckless driving as driving "on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person"); Code § 46.2-854 (defining passing on a curve "where the driver's view . . . is obstructed" as reckless driving).

Although probable cause must be based on "articulable" facts, the officer need not articulate those facts expressly or subjectively rely on them as the basis for her actions. See, e.g., Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*); see also Mason v. Commonwealth, 291 Va. 362, 367-68, 786 S.E.2d 148, 151 (2016) (discussing "articulable facts" in the context of reasonable suspicion). Rather, *the record* must establish the existence of objective facts proving probable cause. Raab, 50 Va. App. at 583 n.2, 652 S.E.2d at 148 n.2; see Whren v. United States, 517 U.S. 806, 812-13 (1996). Also, because the constitutional standard is one of objective rather than subjective reasonableness, it is irrelevant whether the accused is prosecuted for, or even charged with, the offense that provided probable cause for an arrest or other seizure in the first instance. See, e.g., Slayton v. Commonwealth, 41 Va. App. 101, 108-09, 582 S.E.2d 448, 451-52 (2003). Consequently, because the objective facts provided probable cause for the seizure, neither Detective Fraser's subjective intention nor the fact that she did not charge the appellant with reckless driving impacts the probable cause determination.

The fact that the police did not obtain a warrant prior to seizing the appellant based on the reckless driving offense also does not affect the probable cause analysis. The Fourth Amendment clearly permits an officer to make a warrantless arrest of a person who has committed a criminal offense in the officer's presence. See Atwater, 532 U.S. at 354; see also

- 8 -

United States v. Watson, 423 U.S. 411, 417 (1976) (recognizing that the "necessary inquiry . . . [is] not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest"); cf. Code § 19.2-81(B) (providing in pertinent part that an officer "may arrest without a warrant any person who commits any crime in the presence of the officer").

Additionally, contrary to the appellant's suggestion, the fact that a period of time passed after Detective Fraser saw the appellant commit the reckless driving offense and before she seized him for further investigation or arrest does not defeat the existence of probable cause.[5] An officer may conduct an investigatory stop of a vehicle if he has "some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have *recently* been involved in, some form of criminal activity." Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (*en banc*) (emphasis added). Similarly, probable cause to arrest exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect *has committed*, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (emphasis added).

In Armstrong v. Commonwealth, 29 Va. App. 102, 510 S.E.2d 247 (1999), this Court specifically rejected the notion that "probable cause to arrest exists *only at the very moment* that the officer observes the occurrence of the criminal activity[] and disappears immediately unless the arrest is effectuated at exactly that moment." Id. at 111-12, 510 S.E.2d at 251-52. In Armstrong, the lapse of time—which occurred "between the direction [from one officer] to arrest [the defendant]" and the defendant's "actual arrest" by a second officer—was five minutes. Id.

---

[5] The appellant cites no controlling or persuasive authority to support his argument that probable cause to arrest for an observed offense dissipates based merely on the passage of time.

- 9 -

The Court held under those circumstances that "[t]he passage of five minutes before the arrest was accomplished [was] of no legal significance." Id. at 112, 510 S.E.2d at 252. We conclude that the outcome here is equally obvious and is based not on the passage of time but on the quality of information providing probable cause at the time that the seizure occurred.

Well-reasoned decisions from other jurisdictions support this conclusion. "[T]here is no [constitutional] requirement that an offender be arrested the moment probable cause [to arrest] is established." United States v. Reis, 906 F.2d 284, 289 (7th Cir. 1990). Probable cause in the context of an arrest "grow[s] stale only if it emerges that it was based on [subsequently] discredited information."[6] United States v. Bizier, 111 F.3d 214, 219 (1st Cir. 1997) (citing Watson, 423 U.S. at 432 n.5 (Powell, J., concurring)). In short, although probable cause for a search may grow stale, "probable cause to *arrest*, 'once formed[,] will continue to exist for the indefinite future, [as long as] no intervening exculpatory facts come to light.'"[7] Id. (quoting Watson, 423 U.S. at 449 (Marshall, J., dissenting)); 5 Ronald J. Bacigal, Virginia Practice Series: Criminal Procedure § 4:10, at 98 & n.5 (2016-2017 ed.) (discussing staleness in the context of

---

[6] The Supreme Court of Virginia reached a similar conclusion in a case involving a search warrant for blood and hair samples. See Johnson v. Commonwealth, 259 Va. 654, 529 S.E.2d 769 (2000). The Court tested the warrant "for 'staleness' by considering whether the facts alleged . . . provided probable cause to believe, at the time the search actually was conducted," that it "would lead to the discovery of evidence of criminal activity." Id. at 671, 529 S.E.2d at 778. The Court held that the search warrant was not stale because the fact that DNA evidence obtained at the crime scene "matched" the defendant's DNA database profile, the information upon which probable cause was based, was "not subject to change over the 32-day period at issue." Id.

[7] Cases from other jurisdictions support this result. See 2 Wayne R. LaFave, Search and Seizure § 3.7(a), at 462 & n.2 (5th ed. 2012); see also State v. One 1981 BMW Auto., 546 A.2d 879, 883 (Conn. App. Ct. 1988) (noting that "probable cause to arrest, once found, cannot be dissipated by the passage of time" because "[s]tale does not simply mean old"); People v. Geier, 944 N.E.2d 793, 799 (Ill. App. Ct. 2011) (holding that "[m]ere delay" in pulling a defendant over for a traffic violation "does not dissipate probable cause to arrest"); Graves v. State, 912 P.2d 234, 241 (Nev. 1996) (holding that "probable cause did not fade away merely because the police arrested [the defendant] the following day").

searches and arrests). Finally, these principles are consistent with the fact that "when probable cause exists, the timing of an arrest is a matter that the Constitution almost invariably leaves to police discretion." United States v. Winchenbach, 197 F.3d 548, 554 (1st Cir. 1999); cf. Maye v. Commonwealth, 44 Va. App. 463, 478, 605 S.E.2d 353, 360-61 (2004) (in the context of reviewing the execution of a search warrant, holding that determining whether probable cause continues to exist requires consideration of "the necessities of [the] circumstances," including "whether . . . 'other competing law enforcement interests . . . preclude[d] an immediate execution of the warrant'" (quoting Turner v. Commonwealth, 14 Va. App. 737, 740, 747 n.2, 420 S.E.2d 235, 237, 241 n.2 (1992))).

Applying the standard of objective reasonableness to the totality of the circumstances, we conclude that the officers had probable cause to stop the appellant for reckless driving. The existence of probable cause to arrest did not grow stale during the less than three hours that passed between when Detective Fraser saw the appellant driving recklessly and when she and Officer Land seized him in the convenience store parking lot.[8] Therefore, the seizure of the appellant was reasonable under the Fourth Amendment.

### III. CONCLUSION

For these reasons, we hold that probable cause to arrest the appellant did not grow stale. Accordingly, his seizure did not violate the Fourth Amendment, and the circuit court did not err in denying the appellant's motion to suppress. Consequently, we affirm the convictions.

Affirmed.

---

[8] On the facts of this case, we need not address the impact of Code § 19.2-8—Virginia's one-year statute of limitations for misdemeanors—on probable cause to effect a misdemeanor arrest.