COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


MALIK LUQUAM KENNEDY

                                        MEMORANDUM OPINION* BY
v.        Record No. 1737-23-1          JUDGE WILLIAM G. PETTY
                                        OCTOBER 8, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr.,[1] Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.  Appellant submitting on brief.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Malik Luquam Kennedy challenges the trial court's denial of his motion to suppress

evidence recovered from his vehicle.  He argues that the officers seized him in violation of his

Fourth Amendment rights.  Finding no error in the trial court's judgment, we affirm.

BACKGROUND

Just before dawn on May 3, 2023, Norfolk Police Officer Jarett Eisenberg-Arce was

dispatched to investigate a report that a pickup truck was blocking a resident's driveway.  When

he arrived, Eisenberg-Arce confirmed that the truck was blocking the driveway.[2]  The driver of

the pickup truck, later identified as Kennedy, was asleep in the driver's seat with a blue and

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Honorable Tasha D. Scott presided over the hearing on the motion to suppress.

[2] Eisenberg-Arce testified that the resident "could not get his car out [of the driveway].
He had to go completely over the grass."

silver pistol in plain view on his lap. Eisenberg-Arce stepped away from the vehicle because he did not want Kennedy "to wake up and just grab" the gun.

Eisenberg-Arce called for backup and stood behind the truck while watching Kennedy through the truck's window and driver's side mirror. Kennedy soon awoke and saw Eisenberg-Arce through the mirror. Eisenberg-Arce then saw "movement in the car" and thought that Kennedy was leaning toward the truck's passenger side. Eisenberg-Arce immediately went to the driver's side door but could no longer see the firearm. When he asked where the gun was, Kennedy denied having a gun. Knowing that the "gun was still in play" Eisenberg-Arce ordered Kennedy to place his hands on the steering wheel and open the door. Eisenberg-Arce intended to "pat [Kennedy] down for [officer] safety and then figure out everything else from there." Eisenberg-Arce later testified that he detained Kennedy to investigate possible felonious possession of a firearm but conceded that he did not have any information at that point that Kennedy was a convicted felon.

Kennedy put his hands on the steering wheel but initially refused to open the door or exit the truck. He agreed to exit the truck only after additional officers arrived, including Officer J. Ball. Before he arrived at the scene, Ball had discovered from the "Norfolk database" that Kennedy had "been arrested for multiple felonies or felonious events in the city of Norfolk." When he arrived, Ball asked Kennedy to exit the truck to further investigate the presence and location of the firearm. After Kennedy exited the truck, Ball handcuffed him and "looked for the firearm within the [area of Kennedy's] wingspan." Ball found a Smith & Wesson SD9 VE pistol inside the center console. After recovering the firearm, Ball called the Police Operations Center and learned that Kennedy was a convicted felon. The officers arrested Kennedy, and he was later indicted for possessing a firearm as a convicted felon, in violation of Code § 18.2-308.2.

Kennedy moved to suppress the firearm, asserting that the officers did not have a reasonable articulable suspicion that he was committing a crime when they detained him. Kennedy argued that because it is not a crime to sleep in a vehicle with a firearm on one's lap, nor is it a crime to secure a firearm in the center console or glove compartment of a vehicle, neither officer had articulated any objective facts supporting the decision to detain him for further investigation. The Commonwealth responded that the officers' knowledge that a gun was in the car and Kennedy's concealment of the gun when he woke and saw Eisenberg-Arce provided a reasonable and articulable suspicion for detaining Kennedy.

The trial court denied the suppression motion. Kennedy later entered a conditional guilty plea under *North Carolina v. Alford*[3] to possession of a firearm by a convicted felon, reserving his right to appeal the denial of his suppression motion.

ANALYSIS

Kennedy argues that the information Eisenberg-Arce and Ball knew when they detained him provided only a mere hunch that he was engaged in criminal activity, rather than reasonable suspicion. He therefore asserts that the detention was illegal and the trial court erred by denying his motion to suppress the firearm the officers recovered when they searched his truck. We disagree.

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). We are also bound by the trial court's factual findings unless "plainly wrong" or without evidence to support them, *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008), and we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (quoting *Ornelas v. United States*, 517 U.S. 690, 699

---

[3] 400 U.S. 25 (1970).

(1996)).  We "presume—even in the absence of specific factual findings—that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019).  "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Hairston*, 67 Va. App. at 560.  We review "the trial court's application of the law de novo." *Malbrough*, 275 Va. at 168-69.

The Fourth Amendment to the United States Constitution safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment is not "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *Williams v. Commonwealth*, 49 Va. App. 439, 447 (2007) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).  Indeed, "the ultimate touchstone of the Fourth Amendment is reasonableness." *McArthur v. Commonwealth*, 72 Va. App. 352, 362 (2020) (quoting *Hill*, 297 Va. at 822).  "With regard to seizures, reasonableness depends largely on the extent of the individual's loss of freedom compared to the officer's level of suspicion of criminality against the individual." *Barkley v. Commonwealth*, 39 Va. App. 682, 691 (2003).

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)).  At a minimum, reasonable, articulable suspicion requires an officer to possess "'a particularized and objective basis for suspecting the particular person stopped' of breaking the law" when he detains a citizen. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)).  "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance

- 4 -

of the evidence,' and 'obviously less' than is necessary for probable cause." *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016) (quoting *Navarette*, 572 U.S. at 397).

Reasonable suspicion "requires only 'some minimal level of objective justification' for making such a stop." *Id.* (quoting *Beasley v. Commonwealth*, 60 Va. App. 381, 395 (2012)). The possibility that an officer ultimately may be mistaken or that there could be an innocent explanation for the facts causing the officer's suspicion does not negate the officer's reasonable, articulable suspicion. *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011). Indeed, *Terry* stops are permitted to resolve ambiguities concerning conduct that may have an innocent explanation. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). In reviewing whether an officer possessed reasonable, articulable suspicion sufficient to justify a seizure, a reviewing court must consider "the totality of the circumstances—the whole picture." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Considering the totality of the facts and circumstances known to Eisenberg-Arce and Ball when they seized Kennedy,[4] the trial court properly concluded that they had a reasonable, articulable suspicion that Kennedy possessed a firearm unlawfully. When Eisenberg-Arce arrived at the scene in the early morning hours, he found Kennedy asleep in the driver's seat of a truck that was blocking a residential driveway. Kennedy had a firearm on his lap in plain view. As soon as Kennedy awoke and saw Eisenberg-Arce he leaned toward the truck's passenger side. After he did so, Eisenberg-Arce could no longer see the gun. When Eisenberg-Arce asked Kennedy where the gun was, Kennedy falsely insisted that there was no firearm. Kennedy then

---

[4] Kennedy concedes that he was not detained until he exited the vehicle. Although we are not bound by concessions of law, we agree with Kennedy. "A person is not seized according to the Fourth Amendment until he submits to a police officer's show of authority." *Hill v. Commonwealth*, 68 Va. App. 610, 617 (2018). Eisenberg-Arce testified that Kennedy refused to open the door and did not fully cooperate or comply with his demands until after Ball arrived and convinced Kennedy to exit the truck.

refused to open the door as instructed. "The proper focus [of a reasonable suspicion inquiry] is 'the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.'" *Hill*, 297 Va. at 813 (quoting *Terry v. Ohio*, 392 U.S. 1, 23 (1968)). Thus, Eisenberg-Arce's command that Kennedy place his hands on the steering wheel and open the door was reasonable, as he did not know the firearm's location but knew it "was still in play."

Meanwhile Ball had learned that Kennedy had multiple felony arrests in Norfolk before he arrived at the scene. That information added to the officers' "particularized and objective basis" for suspecting that Kennedy was a felon in possession of a firearm. *Heien*, 574 U.S. at 60 (quoting *Navarette*, 572 U.S. at 396). In other words, both officers articulated objective facts known to them at the time of Kennedy's detention. Those articulated facts supported their reasonable suspicion that Kennedy was either concealing a weapon inside the truck or possessing a weapon as a convicted felon. Kennedy's actions in concealing the weapon after he saw Eisenberg-Acre, lying about the presence of the gun inside the truck, and refusing to comply with Eisenberg-Arce's commands, coupled with his history of felony arrests, would lead an experienced police officer to reasonably suspect "that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). Given those circumstances, the officers could briefly detain Kennedy to confirm or dispel their suspicions and to prevent him from causing harm to the officers or others. It is well-settled that "'legitimate and weighty' risks [to police safety] cannot be ignored given 'the inordinate risk confronting an officer as he approaches a person seated in an automobile.'" *Hill*, 297 Va. at 817 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)). And the "Fourth Amendment does not require a policeman . . . to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Christian v. Commonwealth*, 33 Va. App. 704, 713 (2000) (alteration in original) (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972)).

Finally, we reject Kennedy's assertion that the officers lacked reasonable articulable suspicion to detain him because they did not confirm he had any felony convictions before doing so. The officers were not required to be certain that Kennedy was a convicted felon before detaining him and trying to locate the concealed firearm. "The requisite level of *belief*, when calibrated to reasonable suspicion, is less than probable cause, less than a preponderance, and certainly less than beyond a reasonable doubt." *Hill*, 297 Va. at 817. "All that is required is a *suspicion*—a reasonable one that is not 'the product of a volatile or inventive imagination' or one 'undertaken simply as an act of harassment.'" *Id.* (quoting *Terry*, 392 U.S. at 28). Eisenberg-Arce and Ball had such reasonable suspicion here. Therefore, the trial court correctly denied Kennedy's suppression motion.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying Kennedy's suppression motion. The trial court's judgment is affirmed.

*Affirmed.*