COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Chaney and Lorish
Argued at Lexington, Virginia


SARAH MONIQUE EANES

MEMORANDUM OPINION* BY
v.        Record No. 0233-24-3        JUDGE LISA M. LORISH
FEBRUARY 18, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Elena Kagan, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Sarah Monique Eanes argues that the trial court erred by not suppressing evidence found

after a drug dog alerted on her car. The question on appeal is whether officers had reasonable

suspicion to extend the stop and conduct the canine sniff. Because we find that there was

reasonable suspicion, we affirm her convictions for two counts of possessing a Schedule II

controlled substance under Code § 18.2-250.

BACKGROUND

When a trial court denies a motion to suppress, we review the ruling "consider[ing] the

facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Aponte v.

Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App.

552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560). "While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (alteration in original) (footnote omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Before trial, Eanes moved to suppress evidence obtained during a traffic stop of her car. At the hearing on Eanes's motion, Officer Logan Bowman testified that police officers had been surveilling a Martinsville home for drug activity for at least three days. During their surveillance, police saw known drug users coming and going from the house and had also seized methamphetamine from a vehicle leaving the residence.

While on surveillance duty, Officer Bowman saw a man, later identified as Jonathan Hunt, leave the home around midnight. Hunt appeared to be intoxicated as he walked slowly to a blue Volvo. He initially got into the driver's seat, but later moved to the front passenger seat. Moments later, a woman, later identified as Eanes, left the same house and got into the driver's seat of the car. The car pulled away a few seconds later. Officer Bowman told Officer Charles Griffith, a canine handler, that the car had just left.

Officer Griffith followed the Volvo and pulled it over after seeing it cross the center line twice while traveling 43 miles per hour in a 35-mile-per-hour zone. He requested Eanes's driver's license, proof of insurance, and registration, and told her he had stopped her for speeding and crossing the center line twice.[1] Eanes produced her license but said that she did not have insurance and that the title was at her house. Eanes first said that the vehicle was registered in her name. But then she explained that it was not registered to her because, while her mother had

_____

[1] Officer Griffith's body camera footage was played for the trial court.

signed the title of the vehicle over to her, she had not yet gone to the DMV to register the vehicle, as she was "going through a lot" following a death in her family. After obtaining Eanes's driver's license, Officer Griffith returned to the front of his patrol vehicle and asked dispatch to run the names of Eanes and Hunt. Officer Griffith testified that he personally recognized them and already knew that both had a history of drug use and drug-related convictions.

Officer Bowman arrived about a minute later, and Officer Griffith asked him to remove Eanes and Hunt from the car. Officer Bowman asked, "What have you got on them?" Officer Griffith responded, "That's Jonathan Hunt coming from a known drug house with a lot of activity. History of distribution. Lot of activity. Cars coming out of there with drugs in 'em. I have enough for a search warrant. I think I have enough reasonable suspicion to extend the stop." At the suppression hearing, Officer Griffith admitted that he never began writing a speeding ticket.

As Officer Bowman removed Eanes and Hunt from the vehicle, Officer Griffith retrieved his police dog from his patrol vehicle. Officer Griffith testified that the canine was trained to detect cocaine, methamphetamine, and heroin. When Officer Griffith led the canine around the car, about four and a half minutes after the car was first pulled over, it alerted to the passenger side window area of the Volvo. The officers then placed Eanes and Hunt in patrol vehicles and searched the Volvo. That search ultimately uncovered a firearm under the front passenger seat and methamphetamine with cocaine residue in Eanes's purse.

The trial court denied Eanes's motion to suppress. The trial court noted that the officers had been conducting surveillance on a suspected drug house for three days, observed known drug users entering and leaving, and recovered methamphetamine from a vehicle departing the house. The court also noted that Hunt appeared unsteady and intoxicated when he exited the

house after midnight, that Eanes was going eight miles per hour over the speed limit and crossed the center line twice, and that Officer Griffith recognized Eanes and Hunt and knew that they had previous drug convictions. Finally, after watching the body camera footage, the court found that Eanes appeared "agitated" while talking with Officer Griffith and that her explanation for why the vehicle was not registered in her name "made no sense." Based on these circumstances, the court concluded that the officers had reasonable suspicion to prolong that stop and investigate whether Eanes had used drugs and was driving under the influence. The court found that after the trained police dog alerted on the Volvo, the officers had probable cause to search it and lawfully seized the drugs found in the purse.

Eanes appeals this decision.

ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits only unreasonable searches and seizures." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009). "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Id.* (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)).

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citation omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable

- 4 -

seizures." *Id.* at 350. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51 (alterations in original) (quoting *Caballes*, 543 U.S. at 407).

Following *Rodriguez,* a police officer may not extend a stop to conduct a canine sniff "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355. But "[i]f an officer develops independent reasonable suspicion or probable cause that an occupant has committed an additional traffic offense or crime, the officer may extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion." *Williams v. Commonwealth*, 71 Va. App. 462, 482 (2020); *see also Matthews v. Commonwealth*, 65 Va. App. 334, 345 (2015) (explaining that the seizure of the appellant and search of his vehicle was "improper, unless [the officer]'s unrelated questions and conduct can be supported by independent reasonable suspicion or probable cause").

Eanes does not challenge that Officer Griffith lawfully stopped her for traffic violations. Instead, she claims that the officers unconstitutionally prolonged the traffic stop beyond its proper scope when they removed her and Hunt from the vehicle and conducted an open-air dog sniff of her vehicle. While the dog sniff took place only minutes after the traffic stop started, and officers still had Eanes's driver's license, the Commonwealth has not argued that the canine alert occurred before the original mission of the traffic stop had concluded. We will assume, then, that Eanes's detention for speeding and crossing the center line would have ended before the canine sniff took place, and thus that some new reasonable suspicion was required to justify the additional detention.

Reasonable suspicion must be "more than an unparticularized suspicion or 'hunch.'" *Sidney v. Commonwealth*, 280 Va. 517, 523 (2010) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). "Nevertheless, it 'requires only "some minimal level of objective justification.""

- 5 -

*Hairston*, 67 Va. App. at 561 (quoting *Branham v. Commonwealth*, 283 Va. 273, 280 (2012)).  "In making reasonable-suspicion determinations," an appellate court considers "the 'totality of the circumstances' . . . to [assess] whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing."  *Mason v. Commonwealth*, 291 Va. 362, 368 (2016) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  In addition, we review those circumstances through the lens "of a reasonable police officer with the knowledge, training, and experience of the investigating officer."  *Matthews*, 65 Va. App. at 346.

Applying these standards, and in consideration of all the circumstances then present, we find that the trial court did not err in concluding that the officers had a reasonable articulable suspicion that Eanes was under the influence of, or in possession of, illegal drugs to justify the extension of the stop to conduct the dog sniff.  Viewed in the light most favorable to the Commonwealth, the record establishes that police had been surveilling a home for three days on suspicion of drug activity.  During that time, known drug users had been seen coming and going from the residence, and police had seized methamphetamine from a vehicle departing the residence.[2]  Around midnight, Officer Bowman observed Hunt leave the suspected drug house.  Hunt appeared unsteady and intoxicated.  Moments later, Eanes left the house and drove away with Hunt in the passenger seat.  After observing Eanes commit traffic violations, Officer Griffith stopped her.  Officer Griffith recognized both Eanes and Hunt and knew that they had

---

[2] The mere fact that Eanes and Hunt were associated with a known drug house, if it stood on its own, would likely be insufficient to establish reasonable suspicion.  *See McCain v. Commonwealth*, 275 Va. 546, 553 (2008) (finding that a suspect's brief visit to a house where a past controlled drug buy was made did not create reasonable suspicion of criminal activity).  But where the house in *McCain* was associated with a single controlled purchase months earlier, here officers were actively surveilling the house in question for three days and observed current drug activity.  The fact that Eanes and Hunt came from this particular house is certainly part of the "totality of the circumstances," that officers could consider as part of the circumstances giving rise to reasonable suspicion.  *Mason*, 291 Va. at 368 (quoting *Arvizu*, 534 U.S. at 273).

drug-related convictions.[3]  The trial court, after reviewing Officer Griffith's body camera footage, found that Eanes was "agitated" as she spoke with Officer Griffith and that her explanation about the vehicle's registration "made no sense."

At that point, the officers had reasonable suspicion to briefly detain Eanes and Hunt to dispel their suspicion that Eanes was under the influence of drugs or otherwise engaged in drug activity.  "We have repeatedly affirmed that '[i]n conducting a *Terry* stop, the police must diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly.'" *Turay v. Commonwealth*, 79 Va. App. 286, 302 (2023) (en banc) (quoting *Brown v. Commonwealth*, 33 Va. App. 296, 307 (2000)).  Here, the officers had enough reasonable suspicion to justify a short additional detention to allow a drug dog that was already on the scene to conduct a sniff only four and a half minutes after the stop began.  This brief extension of the detention was an "intrusion of liberty" that was reasonably "calibrated against the grounds for suspicion." *Id.*  After the dog alerted, the police then had probable cause to search the vehicle. *See Jones v. Commonwealth*, 277 Va. 171, 180 (2009) (holding that "a positive alert from a narcotics detection dog establishes probable cause to search a vehicle").  For this reason, the police did not violate Eanes's Fourth Amendment rights when they seized the drugs, and the trial court did not err in denying the motion to suppress.

---

[3] Knowledge of a suspect's criminal convictions or past drug use, standing alone, is insufficient to establish reasonable suspicion of criminal activity. *See, e.g.*, *Commonwealth v. Smith*, 281 Va. 582, 594 (2011) ("Nowhere in our opinion do we state that a police officer armed with knowledge of a suspect's criminal record, even a record including firearms and narcotics, is justified in stopping an individual based solely upon that record."); *Matthews*, 65 Va. App. at 346 (finding a suspect's criminal history and appearance "consistent with a narcotics user" insufficient to establish reasonable suspicion); *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011) ("A prior criminal record 'is not, standing alone, sufficient to create reasonable suspicion.'" (citation omitted)).  However, Officer Griffith's personal knowledge is a relevant part of the "totality of the circumstances" to be considered. *Mason*, 291 Va. at 368 (quoting *Arvizu*, 534 U.S. at 273).

## CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*