# COURT OF APPEALS OF VIRGINIA

## Record No. 2083-24-1

DARIUS MARQUISE MILLS-BROWN, SOMETIMES KNOWN AS
DARIUS MARQUIS MILLS-BROWN
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Chaney and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued June 23, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
H. Thomas Padrick, Jr., Judge Designate

Charles E. Haden for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE DANIEL E. ORTIZ

INTRODUCTION

In 2024, a jury convicted Darius Marquise Mills-Brown of arson of an occupied building. The trial court sentenced him to 20 years' incarceration, with 10 years suspended. On appeal, Mills-Brown argues that the trial court erred in (1) denying his motion to suppress inculpatory statements; (2) denying his motion to strike the arson charge; and (3) refusing two of his proposed jury instructions. Finding no error, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

In December 2021, Darius Marquise Mills-Brown was housesitting for Nicole Thomas while she was deployed with the military. Tiffany Marchman and her son lived in a townhouse next door. At trial, Marchman testified that her son was playing outside when he saw Mills-Brown "drop a lighter in the backyard" and walk back into Thomas's house. Marchman went outside and saw that her house and Thomas's house were on fire. She fled with her son and called 911.

Hampton Assistant Fire Marshal Daniel Arsenault arrived at the scene and testified that he saw a "large column of smoke coming from the end of the townhome row" and from the back of the buildings. Arsenault spoke with Marchman who gave him Mills-Brown's contact information. Arsenault called Mills-Brown and asked if he knew about the fire at Marchman's and Thomas's homes. Mills-Brown acknowledged that he was aware of the fire and confirmed that he was "good." When Arsenault asked him where he was, Mills-Brown replied that he was "at the greatest restaurant in Hampton," and "it was [Arsenault's] job to find him" if he wanted to talk to him about the fire.

Chris Persons, an investigator at the Fire Marshal's Office, had not arrived on the scene when a dispatch officer informed him that they had received a call from a person with information about the fire. Persons called the number associated with the tip and learned that the caller was Mills-Brown. Mills-Brown stated that he was at a nearby Subway restaurant. When Persons arrived at the Subway, he saw Mills-Brown sitting at a corner table alone. Persons

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

approached Mills-Brown, identified himself, and asked if he was "ok." Persons did not place Mills-Brown in handcuffs and clarified that he was free to leave at any time. When Persons asked what had happened, Mills-Brown "tear[ed] up, appeared emotional and distraught" and told him that he set fire to the townhome after Thomas kicked him out. Mills-Brown told Persons that he lit a blanket on fire on a wicker chair in the backyard. Mills-Brown then wrote a statement memorializing his oral account. Following the written and oral statements, Persons arrested Mills-Brown for arson of Thomas's dwelling.

Before trial, Mills-Brown told the judge that he wanted to represent himself. After a thorough colloquy, the court granted his request and appointed his attorney as standby counsel. Mills-Brown then filed a *pro se* suppression motion. At the suppression hearing, he argued that his inculpatory statements from Subway were inadmissible because Persons "should have read [him his] rights before that." Mills-Brown acknowledged that he admitted to starting the fire because he was mad that Thomas had thrown him out of the townhouse. He also agreed that Persons was sitting beside him at the Subway, did not handcuff him, and never told him that he had to stay. Mills-Brown confirmed that Persons did not arrest him until after he made oral and written statements. The trial court found that Mills-Brown was not in custody when he made his voluntary statements and denied the motion to suppress.

At trial, Persons testified as an expert witness. He described the events leading up to Mills-Brown's arrest and his subsequent investigation. He explained that the fire had multiple points of origin, including the backyard and Mills-Brown's room inside.[3] The investigation revealed that a knob controlling the flow of natural gas to a burner on the stove was open.

---

[3] Arsenault also testified that the investigation confirmed that while the rear of Marchman's townhome had extensive damage and charring in the windows and roof, the fire did not start there. Instead, Arsenault determined that based on the presence of "ignitable liquid," Thomas's house was the "area of origin."

Persons stated that this knob permitted gas to flow into the house without igniting the burner. Persons also testified that he recovered suspected "accelerants" or items used to start the fire and submitted them to the Department of Forensic Science ("DFS") for analysis. DFS testing determined that fire debris and samples that Persons collected tested positive for the presence of ignitable liquid.[4] Based on these findings, Persons concluded that the fire was set intentionally and that accelerants had been used to start the fire.

After the Commonwealth rested, Mills-Brown moved to strike "the occupied portion of th[e] charge." The trial court questioned Mills-Brown to confirm that he understood that he was only challenging the "occupied" element of Code § 18.2-77—not the lesser-included offense of arson. Mills-Brown concurred stating, "My motion is to change the occupied portion of this charge to unoccupied." The trial court denied the motion.

Mills-Brown took the stand in his defense and testified that the fire was an accident caused by "a discarded marijuana blunt."[5] He said that after the fire started, he ducked behind the next-door apartment building and called 911. When the firefighters "took too long" to arrive, he went to a nearby restaurant, where he answered Arsenault's call and told him to "do your job to find me." He "didn't want to be disturbed by law enforcement" because "basically they let [him] down . . . [and] really didn't care about [him]." After he testified, Mills-Brown renewed his motion to strike. The trial court denied the motion.

---

[4] Kelsey Winters, a trace evidence forensic scientist with DFS, analyzed the samples collected by Persons and found two different types of ignitable fluid.

[5] Persons disputed this testimony, stating that it was not possible to start this type of fire with a marijuana blunt because "the weather was cooler," and the "amount of time it would take for a marijuana blunt to start a fire is overwhelmingly longer" than the time it took for this fire to develop, and the "burn patterns . . . were not consistent with a smoldering fire." The heavy damage was more consistent with a "quicker fire development and increase of high amount of heat," and consistent with the "use of ignitable liquids as an accelerant."

- 4 -

While the parties agreed on most jury instructions, Mills-Brown handwrote objections to two of the Commonwealth's proffered instructions. The first, 1A, read "A dwelling house is any structure in which one or more persons usually dwell or lodge." Mills-Brown objected to the instruction as "vague" and stated that it did not fully explain the term "dwelling." The second, 1B, read "The term occupied does not require the physical presence of the occupant at the time of the arson, but means that the use of the dwelling is as a place of current habitation rather than a dwelling that is temporarily vacant." Mills-Brown disagreed, arguing that an occupied dwelling could "require [a] physical presence." The trial court denied both amendments finding that the proposed changes were "vague" and that the "instruction[s] as submitted by the Commonwealth compl[y] with the law and properly instruct[] the jury based on the law and the facts of th[e] case."

The jury convicted Mills-Brown of arson of an occupied dwelling in violation of Code § 18.2-77. He moved to set aside the verdict as contrary to the law and the evidence but offered no argument. The trial court denied the motion and sentenced him to 20 years' incarceration, with 10 years suspended. Mills-Brown appeals.

ANALYSIS

I. The trial court did not err denying Mills-Brown's motion to strike.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition

it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The question on appeal is not if the Court believes the evidence at trial was sufficient to survive a motion to strike, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth*, 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To convict Mills-Brown of arson under Code § 18.2-77, the Commonwealth had to prove that he "maliciously [burned] . . . in whole or in part, or [caused] to be burned or destroyed . . . any dwelling house." At his motions to strike, Mills-Brown challenged only the sufficiency of the evidence that the dwelling was "occupied."[6] He argued that an occupied building required the Commonwealth to prove the physical presence of people at the time of the fire or a place where "people plan to return to for lodging." We disagree.

"[T]he term 'dwelling house' has been defined, in the context of Code § 18.2-77, as 'a place which human beings regularly use for sleeping.'" *Alston v. Commonwealth*, 32 Va. App. 661, 665-66 (2000) (alteration in original) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 513 (1998)). The Commonwealth does not need to establish that the defendant owned the

---

[6] Mills-Brown only challenged the "occupied" portion of the arson charge—he did not argue that the evidence was insufficient to support a prima facie case of arson. Now, on brief, Mills-Brown argues that the Commonwealth failed to prove his starting the fire was intentional. But, absent narrow exceptions, we will not consider arguments made for the first time on appeal. *Martin v. Ziherl*, 269 Va. 35, 39 (2005). Thus, this argument is procedurally defaulted. *See* Rule 5A:18.

premise so long as they prove "routine habitation." *Id.* at 666. As this Court explained in *Marable v. Commonwealth*, an "occupied" dwelling is one "where the occupant or occupants are merely temporarily absent but continue to reside there." 27 Va. App. at 513. In other words, an occupied dwelling does not require "contemporaneous physical occupation" at the time of the burning, provided that the place is "regularly use[d] for sleeping." *Id.*

The evidence before the jury permitted it to conclude that Thomas's townhouse was an occupied dwelling. By his own account, Mills-Brown had been housesitting for Thomas when the fire occurred. Although he had been kicked out of the house, he had yet to permanently depart. He testified that he slept in the house the night before the fire, and when the blaze began, he ran inside to get his phone and clothes. Moreover, photos from the investigation revealed that Thomas's house had two bedrooms with beds and that there were clothes present in one of the bedrooms. While Mills-Brown did not own the townhome, his continued presence at the house established "routine habitation." Thus, the jury reasonably concluded that Thomas's house was "occupied" under Code § 18.2-77(A).[7]

II. The trial court did not err in refusing Mills-Brown's proposed jury instructions.

On appeal, "we review a circuit court's decision to grant or deny a proposed jury instruction for an abuse of discretion." *Commonwealth v. Kartozia*, 304 Va. 321, 331 (2025) (citing *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). A trial court "has broad discretion over whether to give or deny proposed jury instructions."

_____

[7] The indictment only charged Mills-Brown with burning or destroying Thomas's dwelling—not Marchman's.

*Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

Here, the trial court did not abuse its discretion by refusing Mills-Brown's proffered amendments. The challenged jury instructions were accurate statements of law. Instruction 1A supplied the jury with the definition of dwelling house as found in the Virginia Criminal Model Jury Instructions: "any structure in which one or more persons usually dwell or lodge." Model Jury Instrs.—Crim. No. 7.150. Mills-Brown argued that a "dwelling house is also always a place of current habitation, and this fact should be added to the instruction." But, as we held in *Alston*, to satisfy the "dwelling house" element, the Commonwealth only needs to establish routine habitation. Thus, the trial court did not err finding that 1A adequately "articulate[d] what a dwelling house [was]."

Mills-Brown also objected to the proffered instruction defining "occupied." He asserted that "the Commonwealth can't present any specific factual findings to prove that the legislature didn't mean for the term occupied to mean physical presence." The trial court denied this objection finding that the Commonwealth's proffered instruction "complie[d] with the law and properly instruct[ed] the jury based on the law and the facts of th[e] case." As discussed above, a dwelling house is occupied when it is regularly used for sleeping. *Marable*, 27 Va. App. at 513; *see Johnson v. Commonwealth*, 18 Va. App. 441, 446-47 (1994). Contemporaneous physical presence is not required. Consequently, the trial court did not abuse its discretion by refusing Mills-Brown's amendments to the jury instructions.

III. The trial court did not err denying Mills-Brown's motion to suppress.

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560). In conducting our review, we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008). "We will review the trial court's application of the law de novo." *Id.* at 168-69. "When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Commonwealth v. White*, 293 Va. 411, 414 (2017).

Mills-Brown contends that his oral and written confessions should have been suppressed because Investigator Persons did not read him his *Miranda*[8] rights during their conversation at Subway. As Mills-Brown was not in custody at the time of his confession, we disagree.

The "protection afforded by *Miranda* applies only when a suspect is subjected to custodial interrogation." *Webber v. Commonwealth*, 26 Va. App. 549, 557 (1998). *See, e.g.*, *Pruett v. Commonwealth*, 232 Va. 266, 272 (1986) (explaining that *Miranda* does not apply to a police officer's "general questioning" of citizens during a fact-finding mission). "Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Keepers v. Commonwealth*, 72 Va. App. 17, 34 (2020) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "The ultimate inquiry into whether an individual is subject to custodial interrogation is

---

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 9 -

simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* (quoting *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)).

"To evaluate a suspect's custodial status, we must determine 'how a reasonable person in the suspect's situation would have understood his circumstances.'" *Id.* (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019)). Relevant factors include "whether the police used physical restraints, displayed their weapons, engaged in physical contact, or told the suspect he was free to leave," and the number of officers present. *Id.*

The circumstances surrounding the interview support the trial court's finding that Mills-Brown was not in custody. Mills-Brown voluntarily agreed to meet Investigator Persons at a local Subway restaurant. When Persons arrived, he found Mills-Brown seated at a corner table ten feet from the exit. Persons identified himself and started the conversation checking on Mills-Brown's well-being. At no point during the conversation did Persons exert force or restrain Mills-Brown. Indeed, Persons clarified that Mills-Brown was free to leave at any time. When Persons asked what happened, Mills-Brown teared up and appeared emotionally distraught before disclosing that he started the fire after Thomas kicked him out of the townhouse. He stated that he had gotten mad and just "snapped." And Persons only placed Mills-Brown under arrest after he made his oral and written confession. Therefore, we find that the court did not err in determining that a reasonable person would have felt free to leave under the circumstances.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*